TIMOTHY COURCHAINE
United States Attorney
District of Arizona
BROCK HEATHCOTTE
Assistant U.S. Attorney
Arizona State Bar No.014466
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4449
Telephone: (602) 514-7500
Facsimile:  (602) 514-7760
Email: Brock.Heathcotte@usdoj.gov
*Attorneys for the United States*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Penny Lynn McCarthy, | No. CV-25-02005-PHX-ROS(MTM) |
| Plaintiff, | |
| v. | **DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT (DOC. 1)** |
| United States of America, et al., | |
| Defendants. | |

Defendant United States of America ("USA") respectfully requests the complaint (Doc. 1) in this matter be dismissed for the reasons explained herein.

## I.    INTRODUCTION

### A.    Procedural Status of the Case

Plaintiff filed her complaint on June 9, 2025. Defendant USA was timely served with the complaint on June 17, 2025. Pursuant to Rules 12(a)(2) and 6(a)(1) a responsive pleading is due from the USA by August 18, 2025. No other defendants have been served.

### B.    Fact Allegations Material to this Motion to Dismiss

The complaint contains a vast number of allegations, many of which are marginally relevant, if at all, and with much repetition. The following allegations of fact are stated

many times in different ways in the complaint and form the nucleus of the actual claim. Defendant summarizes them here for the Court, understanding that the Court will view the facts alleged in the complaint in a light favorable to Plaintiff when ruling on a motion to dismiss at this stage. Defendant is not here offering any facts to oppose those presented by Plaintiff, nor is Defendant admitting Plaintiff's allegations are true.

1.    Plaintiff Penny McCarthy is not the same person as Carole Anne Rozak.

2.    The U.S. Marshals Service had a warrant for the arrest of Ms. Rozak.

3.    The U.S. Marshals Service believed Plaintiff was Ms. Rozak using McCarthy as an alias.

4.    The U.S. Marshals Service arrested Plaintiff at her home, thinking she was Ms. Rozak.

5.    It was unreasonable for the U.S. Marshals Service to believe Plaintiff was Ms. Rozak.

6.    Plaintiff was booked and held in custody overnight.

7.    Plaintiff was released after an initial appearance in court the next day.

8.    It was unreasonable for the U.S. Marshals Service to keep Plaintiff in custody overnight.

9.    Plaintiff suffered damages from the incident.

Plaintiff makes other arguments masquerading as factual allegations, such as, incorrectly stating or implying many times that Plaintiff was arrested without a warrant. The U.S. Marshals Service were executing an arrest warrant, and Plaintiff admits as much elsewhere in the complaint.

## II.    LEGAL STANDARD RULE 12(b)(1), (6)

Federal courts are courts of limited jurisdiction and are presumptively without jurisdiction over civil actions. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). The burden of establishing the contrary rests upon the party who asserts jurisdiction. Id.

Federal Rule of Civil Procedure 12(b)(1) provides that a party may move to dismiss

a civil case at any point during the litigation. There are two types of 12(b)(1) attacks: facial and factual. "In a facial attack, the challenger asserts that the allegations in the complaint are, on their face, insufficient to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The allegations of the complaint are taken as true. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a factual attack, the allegations in the complaint are not presumed to be true. *Safe Air for Everyone*, 373 F.3d at 1039. The challenger may introduce affidavits or other evidence to establish that the court lacks subject-matter jurisdiction. *Id.*

Federal Rule of Civil Procedure 8 requires that a complaint allege sufficient facts to state a claim that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To survive a motion to dismiss under Rule 12(b)(6), while a complaint need not plead detailed factual allegations, the factual allegations must allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. That is, the complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555. A well-pleaded complaint requires more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A complaint may be dismissed under Rule 12(b)(6) for failing to properly allege a claim upon which relief may be granted. The district court must accept as true all allegations of material fact and construe them in the light most favorable to the plaintiff. *Cervantes v. United States*, 330 F.3d 1186, 1187 (9th Cir. 2003). The district court does not have to accept as true legal allegations cast in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Dismissal under Rule 12(b)(6)

1   "can be based on the lack of a cognizable legal theory or the absence of sufficient facts

2   alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696,

3   699 (9th Cir. 1988).

4   **III.    USA DEFENDANT, COUNT 9, SHOULD BE DISMISSED**

5           Count 9: Federal Tort Claims Act identifies only the United States of America as a

6   defendant. As a sovereign, the United States "can be sued only to the extent that it has

7   waived its immunity" from suit. *United States v. Orleans*, 425 U.S. 807, 814 (1976).

8   "Sovereign immunity is jurisdictional in nature. Indeed, the terms of [the United States']

9   consent to be sued in any court define that court's jurisdiction to entertain the suit." *FDIC

10  v. Meyer*, 510 U.S. 471, 475 (1994). "A waiver of the Federal Government's sovereign

11  immunity must be unequivocally expressed in statutory text and will not be implied.

12  Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in

13  terms of its scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996).

14  When there are two contrary, supportable interpretations with respect to the proper scope

15  of a waiver of sovereign immunity, courts should not read the ambiguous portion of the

16  statute to find a waiver. *Siddiqui v. United States*, 359 F.3d 1200, 1204 (9th Cir. 2004).

17          The Federal Tort Claims Act (FTCA) "was designed primarily to remove the

18  sovereign immunity of the United States from suits in tort. The [FTCA] gives federal

19  district courts exclusive jurisdiction over claims against the United States for injury or loss

20  of property, or personal injury or death caused by the negligent or wrongful act or omission

21  of federal employees acting within the scope of their employment. 28 U.S.C. § 1346(b)(1)."

22  *Levin v. United States*, 568 U.S. 503, 506 (2013). In doing so, the FTCA accords federal

23  employees "absolute immunity from common-law tort claims arising out of acts they

24  undertake in the course of their official duties. See 28 U.S.C. § 2679(b)(1)." *Osborn v.

25  Haley*, 549 U.S. 225, 229 (2007). Instead, the FTCA makes the United States liable "to the

26  same extent as a private individual under like circumstances," 28 U.S.C. § 2674, "under

27  the law of the place where the act or omission . . . occurred." *Id; See Ambros-Marcial v.

28  United States*, 377 F. Supp. 2d 767, 776-78 (D. Ariz. 2005) (no FTCA recovery for

- 4 -

1  negligence for plaintiffs, who were trespassers, because a landowner owed no duty of care
2  under Arizona law to trespassers).

3      Count 9 should be dismissed without prejudice because the complaint does not
4  present a short and plain statement of the claim showing Plaintiff is entitled to relief.
5  Plaintiff did not need 486 paragraphs over 55 pages of the complaint to tell this story in a
6  short and plain statement. Including every minute detail imaginable about how Plaintiff
7  felt, what she said, and what people said to her during her ordeal, is tantamount to an
8  attempt to send hundreds of quotes Requests for Admissions out to Defendants before discovery
9  even begins.

10     The whole Complaint consists of 79 pages and 600 paragraphs, with many
11  additional subparts of paragraphs, all to describe what can fairly and simply be called a
12  case of mistaken identity arrest. Federal Rules of Civil Procedure, Rule 8(a)(2) states that
13  for a pleading to state a claim for relief, it "must contain: a short and plain statement of the
14  claim showing that the pleader is entitled to relief." Rule 8(d)(1) states, that "each
15  allegation must be simple, concise, and direct." Rule 10(b) requires that numbered
16  paragraphs be "limited as far as practicable to a single set of circumstances."

17     Plaintiff's complaint fails these requirements of Rules 8 and 10, and it therefore fails
18  to state a claim. Pursuant to Rule 12(b)(6), the Court should dismiss the complaint for
19  failure to state a claim. Plaintiff seems to be using the Complaint for publicity[1] or as a
20  discovery tool. Defendant USA respectfully asks the Court to dismiss Plaintiff's complaint
21  in its entirety without prejudice.

22  **IV.    INDIVIDUAL DEFENDANTS, COUNTS 1-8, 10, SHOULD BE DISMISSED**

23      **A.    This Court may dismiss the counts against employees *sua sponte*.**

24     This motion to dismiss is brought by Defendant United States alone, not by other
25  Defendants. However, if the Court finds that a claim is contrary to law, it may act *sua*

---

27  [1] See, e.g., Reason Magazine article of June 11, 2025 (two days after the complaint
28  was filed) containing quotes from Plaintiff's counsel Mr. Avelar. Available online at
https://reason.com/2025/06/11/dont-you-want-to-confirm-who-i-am-a-mistakenly-
arrested-grandmother-asked-the-marshals-they-did-not/ (accessed on August 12, 2025).

*sponte* to dismiss the count. *Creech v. Tewalt*, 84 F.4th 777, 787 (9th Cir. 2023). Because the legal arguments against Plaintiff's other counts are exceptionally strong and simple to articulate and understand, Defendant United States presents the following arguments supporting dismissal of all claims against individual Defendants for the Court's benefit.

**B.    Counts 1-6, Arizona law tort claims against individual USA employees acting in their official capacities for: Assault, Battery, Trespass, False Imprisonment (or False Arrest), Malicious Prosecution, and Negligence should be dismissed.**

It is well established that federal employees acting in the scope of their employment cannot be sued for state law torts. The FTCA is the exclusive remedy to seek damages for the conduct of federal employees:

> The remedy against the United States provided by sections 1346(b) and 2672 of this title [28] for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee. Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded.

28 U.S.C. § 2679(b)(1).

The complaint does not contain allegations that the federal employees involved acted in their personal capacities beyond the scope of their employment. On the contrary, the complaint contends that the federal employees were acting "within the scope of their employment" at all times, and therefore that the United States is liable under the FTCA for these actions by its employees. Complaint at 71, #581 and at 73, #589.

For these reasons, Counts 1-6 should be dismissed with prejudice.

**C.    Counts 7 and 8: Fourth Amendment (*Bivens*) claims against "Unknown" Agents should be dismissed.**

As the Supreme Court has recently emphasized, "recognizing a cause of action

- 6 -

1    under Bivens is 'a disfavored judicial activity.'" *Egbert v. Boule*, 596 U.S. 482, 491 (2022)

2    (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017)). Under the two-part test set out in

3    Abbasi, the court must consider (1) "whether the case presents 'a new Bivens context'";

4    and, if so, (2) whether "there are 'special factors' indicating that the Judiciary is at least

5    arguably less equipped than Congress to 'weigh the costs and benefits of allowing a

6    damages action to proceed.'" *Id*. at 492 (quoting *Abbasi*, 582 U.S. at 136). The Court has

7    cautioned that "[i]f there is even a single 'reason to pause before applying Bivens in a new

8    context,' a court may not recognize a *Bivens* remedy." *Id*. (quoting *Hernandez v. Mesa*,

9    589 U.S. 93, 102 (2020)).

10          The three courts of appeals to consider the issue have agreed that cases involving

11    the execution of arrest warrants by the Marshals Service arise in a new context and there

12    are special factors counseling hesitation in this context. *See Logsdon v. USMS*, 91 F.4th

13    1352, 1358 (10th Cir. 2024); *Cain v. Rinehart*, 2023 WL 6439438, at *4 (6th Cir. July 25,

14    2023); *Lewis v. Bartosh*, 2023 WL 8613873, at *2 (2d Cir. Dec. 13, 2023). The Court

15    should reach the same conclusion here. Marshals Service officers are a "new category of

16    defendants," operating under a distinct "legal mandate" and engaged in a different type of

17    police work. See *Bulger v. Hurwitz*, 62 F.4th 127, 140 (4th Cir. 2023) (quotation marks

18    omitted) (enumerating special factors recognized by the Supreme Court).

19          The Supreme Court in *Abbasi* established stringent criteria to assess whether an

20    implied damages remedy is available at all. The two-step test set out in *Abbasi* asks (1)

21    whether the claim seeks to extend *Bivens* to a "'new context' or involves a 'new category

22    of defendants'"; and, if so, (2) whether any special factors counsel hesitation against

23    extending *Bivens* to that context. *Hernandez*, 589 U.S. at 102 (quoting *Correctional Servs.

24    Corp. v. Malesko*, 534 U.S. 61, 68 (2001)). The Court revisited the *Abbasi* framework in

25    *Egbert v. Boule* and clarified that "those steps often resolve to a single question: whether

26    there is any reason to think that Congress might be better equipped to create a damages

27    remedy." *Egbert*, 596 U.S. at 492. In other words, a court often "faces only one question:

28    whether there is any rational reason (even one) to think that Congress is better suited to

'weigh the costs and benefits of allowing a damages action to proceed.'" *Id*. at 496 (quoting *Abbasi*, 582 U.S. at 136). "If there is a rational reason to think that" Congress, rather than the judiciary, should decide whether to create a cause of action, as there "will be in most every case," "no *Bivens* action may lie." *Id*. at 492.

The Supreme Court's "understanding of a 'new context' is broad." *Hernandez*, 589 U.S. at 102. A cause of action arises in a new context if it differs "in a meaningful way from previous Bivens cases decided by th[e Supreme] Court." *Abbasi*, 582 U.S. at 139; see also *id*. at 139-40 (listing "some examples [that] might prove instructive," including "the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; [and] the risk of disruptive intrusion by the Judiciary into the functioning of other branches"). The Supreme Court has "identified several examples of new contexts," including "a case that involves a 'new category of defendants,'" *Egbert*, 596 U.S. at 492 (quoting *Malesko*, 534 U.S. at 68), or a different "legal mandate," *Abbasi*, 582 U.S. at 140. And the Court has made clear that "even a modest extension is still an extension," so "the new-context inquiry is easily satisfied." *Id*. at 147, 149; see also Tate v. Harmon, 54 F.4th 839, 846 (4th Cir. 2022) ("The Supreme Court has instructed that a new context may arise if even one distinguishing fact has the potential to implicate separation-of-powers considerations.").

Applying this precedent, the Second, Sixth, and Tenth Circuits have all held that Fourth Amendment use of force cases arising from the Marshals Service's execution of arrest warrants arise in a new context. See *Logsdon*, 91 F.4th at 1358; *Cain v. Rinehart*, 2023 WL 6439438, at *4 (6th Cir. July 25, 2023); *Lewis v. Bartosh*, 2023 WL 8613873, at *2 (2d Cir. Dec. 13, 2023). This is plainly correct, as such cases involve "a 'new category of defendants,'" *Egbert*, 596 U.S. at 492 (quoting *Malesko*, 534 U.S. at 68), operating under a different "legal mandate," see *Abbasi*, 582 U.S. at 140, and engaged in a different aspect of police work. The Court should reach the same conclusion here.

This case also arises in a new context because it involves a qualitatively different

- 8 -

1  aspect of police work than did *Bivens*. Courts "do not evaluate a potential *Bivens* cause of
2  action 'at the level of "the Fourth Amendment" or even at the level of "the unreasonable-
3  searches-and-seizures clause."'" *Hicks v. Ferreyra* ("*Hicks II*"), 64 F.4th 156, 167 (4th Cir.
4  2023), *cert. denied,* 144 S. Ct. 555 (2024)(quoting *Annappareddy v. Pascale*, 996 F.3d 120,
5  135 (4th Cir. 2021)). *Egbert*, like *Bivens*, involved Fourth Amendment excessive-force
6  claims, but the Court reasoned that even "parallel circumstances" were not enough to
7  justify a *Bivens* claim. *Egbert*, 596 U.S. at 501 (quotation marks omitted); see also *Mays*,
8  70 F.4ᵗʰ 198, 204-05; *Annappareddy*, 996 F.3d at 135-36.

9      *Bivens* involved "a claim grounded on the right to be free from ***warrantless*** searches
10 and seizures." *Hicks II*, 64 F.4th at 167 (emphasis in original). The "issue in *Bivens* was
11 whether a plaintiff was entitled to seek damages in a civil action after federal narcotics
12 officers conducted a warrantless search of his apartment, arrested him for alleged narcotics
13 violations, and later subjected him to a visual strip search." *Id*. at 165. The court has
14 "distinguished that context from the context of searches authorized by a warrant," as in this
15 case. *Id*. at 167; *Annappareddy*, 996 F.3d at 135-37. This case, by contrast, involves
16 execution of an arrest warrant.² As the Sixth Circuit reasoned, the fact that the Marshals
17 Service was executing an arrest warrant "creates a new context for Bivens purposes." *Cain*,
18 2023 WL 6439438, at *3. But see *Logsdon*, 91 F.4th at 1357 (holding that arrest by
19 Marshals Service task force presents a new context under Abbasi but giving "little weight"
20 to the warrant). Deputy Marshals executing an arrest warrant are acting under a different
21 legal mandate because the warrant is based on a probable cause determination by a judicial
22 officer and gives them "authority to enter the home." *Cain*, 2023 WL 6439438, at *3.

23     As the Second, Sixth, and Tenth Circuits have held, the relevant special factors—in
24 particular, alternative remedial structures, counsel against extending a Bivens remedy to
25 the new context presented here. See *Logsdon*, 91 F.4th at 1359-61; *Cain*, 2023 WL
26 6439438, at *4; *Lewis*, 2023 WL 8613873, at *2.

27
28     ² The fact of mistaken identity does not negate the fact that the Marshals were executing a valid arrest warrant against the person they believed to be the subject of that warrant.

The Supreme Court in *Egbert* held that "a court may not fashion a Bivens remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" 596 U.S. at 493 (quoting *Abbasi*, 582 U.S. at 137). And that is true even if the remedial structure does not provide complete relief. *Id*. (citing *Bush v. Lucas*, 462 U.S. 367, 388 (1983)). Indeed, that is true even if the remedial structure provides no relief at all to a particular plaintiff. See *Schweiker v. Chilicky*, 487 U.S. 412, 421-22 (1988). This is because "*Bivens* 'is concerned solely with deterring the unconstitutional acts of individual officers.'" *Egbert*, 596 U.S. at 498. Thus, "[s]o long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id*. If the remedial process is established by Congress or the Executive to deter misconduct, the adequacy of such deterrence is not for the courts to decide. *Id*.

Congress has established damages remedies under some circumstances. By statute, the Department of Justice "may settle, for not more than $50,000 in any one case, a claim for personal injury, death, or damage to, or loss of, privately owned property, caused by an investigative or law enforcement officer as defined in section 2680(h) of title 28 who is employed by the Department of Justice acting within the scope of employment that may not be settled under [the FTCA]." 31 U.S.C. § 3724; see also *Davis v. Dotson*, 2021 WL 5353099, at *2 (11th Cir. Nov. 17, 2021) (per curiam) (describing this statutory remedy as an "alternative means" for the plaintiff to "seek compensation"); *United States v. Norwood*, 602 F.3d 830, 836 (7th Cir. 2010) (noting that section 3724 would be an obstacle to the criminal defendant's hypothetical *Bivens* action).

Congress has repeatedly legislated regarding the Marshals Service without creating other remedies, and "this congressional silence counsels against finding a *Bivens* remedy in a new context." *Cain*, 2023 WL 6439438 at *4 (citing *Abbasi*, 582 U.S. at 143-44 ("[I]n any inquiry respecting the likely or probable intent of Congress, the silence of Congress is relevant[] ….")).

For all these reasons Counts 7 and 8 alleging *Bivens* claims against individual Marshals Service Agents should be dismissed.

**D.    Count 10: Constitutional Claims under the Westfall Act should be dismissed.**

Plaintiff argues in her complaint (Count 10) that all the state court claims described in Counts 1-6 should be allowed to proceed to litigation, seemingly as a new Count 10, because they are all based upon allegations that the federal employees violated her constitutional rights. Plaintiff is arguing that all acts by federal employees that can be characterized as civil rights claims give rise to numerous state law claims that are not precluded by the Westfall Act. Indeed, by Plaintiff's reckoning *all* claims under state law for torts such as the ones alleged (Assault, Battery, Trespass, False Imprisonment, Malicious Prosecution) are by their very nature constitutional claims that are not precluded by the Westfall Act. And, if they are precluded, then the Westfall Act is unconstitutional.

In support of her contention that state law tort claims based on constitutional violations can be brought against federal employees, Plaintiff cites the exception at 28 U.S.C. § 2679(b)(2)(A), that the (b)(1) preclusion of claims against federal employes "does not extend or apply to a civil action against an employee of the Government which is brought for a violation of the Constitution of the United States." No court has agreed with Plaintiff's theory, not even the one case cited in the complaint itself.

The complaint cites a concurring opinion from one United States Court of Appeals, District of Columbia Circuit case as support for the argument. But even that concurring judge concedes that the United States Supreme Court does not support his argument, and that SCOTUS has consistently held that *Bivens* claims **are** the exception to the Westfall Act that are preserved by the exception in 2679(b)(2)(A). *Buchanan v. Barr*, 71 F.4th 1003, 1016 (D.C. Cir. 2023)("The Supreme Court has said the exception "simply left *Bivens* where it found it," ensuring that *Bivens* actions weren't precluded by the Westfall Act. *Hernandez v. Mesa*, —— U.S. ——, 140 S. Ct. 735, 748 n.9, 206 L.Ed.2d 29 (2020).")

It seems rather incongruous for a complaint to include a specific count that by its

own admission is legally untenable, simply declaring that Supreme Court jurisprudence is unconstitutional. Counts 1-6 have already been alleged. Presumably, when the defendant argues they should be dismissed (as is done here in part IV(b)) because federal law precludes them, the Plaintiff could go on to respond with arguments about constitutionality. There was no need to include a Count 10 to put the legal argument sustaining Counts 1-6 in the complaint itself.

Count 10 should be dismissed as contrary to settled law and also because it is not actually a new count of the complaint, it simply mimics Counts 1-6 and should be dismissed for the same reasons. Because the argument for dismissal of Counts 1-6 has already been presented above, Defendant declines to engage in further argument about Count 10. If Plaintiff responds with legally supported arguments in support of Counts 1-6 or 10, Defendant will address those arguments in a Reply.

## V.    CONCLUSION

For the reasons stated herein, Defendant United States asks the Court to dismiss Count 9 without prejudice, and to dismiss Counts 1-8, and 10 with prejudice.

RESPECTFULLY SUBMITTED August 18, 2025.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

*/s/ Brock Heathcotte*
BROCK HEATHCOTTE
Assistant United States Attorney
*Attorneys for the United States*